1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BOMANITE CORPORATION, a California Corporation, and QC CONSTRUCTION PRODUCTS, LLC, a Delaware Limited Liability Company,** | **1:04-cv-05333 OWW SMS** |
| **Plaintiffs,** | **MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS [Fed. R. Civ. P. 12(b)(6)] PLAINTIFFS' FIRST AMENDED COMPLAINT.** |
| **v.** | |
| **CATHAY PIGMENTS (USA), INC., a Nevada Corporation, MARTIN EDISON and DOES 1 through 20, inclusive,** | |
| **Defendants.** | |

## I.   INTRODUCTION

Defendants Cathay Pigments, Inc. ("Cathay") and Martin Edison ("Edison") move to partially dismiss the First Amended Complaint of Plaintiffs Bomanite Corporation ("Bomanite") and QC Construction Products, LLC ("QC"). Defendants move to dismiss Plaintiffs' claims for consequential damages for breach of contract, fraud, interference with an economic relationship, and interference with prospective economic advantage, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants also move for more specific pleading of Plaintiffs' fraud claim pursuant to Fed R. Civ. P.

9(b).  (Doc. 15, Defendants' Motion, filed May 24, 2004).

Plaintiffs oppose.  (Doc. 21, Plaintiffs' Opposition, filed Aug.

2, 2004).

## II.    <u>PROCEDURAL HISTORY</u>

Plaintiffs Bomanite and QC (collectively, "Plaintiffs")
filed their original complaint against Defendants Cathay and
Edison (collectively, "Defendants") in the Superior Court of
California, County of Madera, for (1) breach of contract; (2)
fraud; and (3) intentional interference with prospective economic
advantage.  (Doc. 1, Plaintiffs' Compl., filed January 21, 2004;
*see also* Doc. 11, Order Granting Defendants' Motion to Dismiss,
17).  The original complaint was removed to the United States
District Court for the Eastern District of California based on
diversity jurisdiction pursuant to 28 U.S.C. § 1441(a), in
accordance with the removal procedure outlined in 28 U.S.C.
§ 1446(a).  (*See* Doc. 1, filed February 20, 2004; *see also* 28
U.S.C. § 1332(a)(1) ("The district courts shall have original
jurisdiction of all civil actions where the matter in controversy
exceeds the sum or value of $75,000, exclusive of interest and
costs, and is between...[c]itizens of different [s]tates.")).

Defendants moved to dismiss Plaintiffs' original complaint
pursuant to Fed. R. Civ. P. 12(b)(6).  (*See* Docs. 6 and 7, filed
Feb. 27, 2004).  Plaintiffs opposed.  (*See* Doc. 8, filed Mar. 22,
2004).  Defendants replied.  (Doc. 9, filed Mar. 29, 2004).  Oral
arguments were heard April 5, 2004.  In a memorandum decision and
order, Defendants' motions to dismiss were granted with respect

**2**

to Plaintiffs' claims for consequential damages for breach of contract, fraud, and intentional interference with prospective economic advantage. (Doc. 11 at 19, filed Apr. 12, 2004). Plaintiffs were given twenty (20) days following service of the order to amend their complaint, and Defendants were given twenty (20) days after Plaintiffs' filing to respond to their amended complaint. (*Id.*)

Plaintiffs filed an amended complaint. (Doc. 14, First Am. Compl., filed May 3, 2004). In addition to pleading three claims present in their original complaint, Plaintiffs also add a fourth, new claim: interference with an existing economic relationship.[1] (*Id.*). Plaintiffs now allege: (1) breach of contract; (2) fraud; (3) interference with an existing economic relationship; and (4) interference with prospective economic advantage. (*Id.*). Defendants moved to partially dismiss Plaintiffs' First Amended Complaint. (Doc. 17, Defendants' Memo, filed May 24, 2004). Plaintiffs opposed. (Doc. 21, Plaintiffs' Opp., filed Aug. 2, 2004). Defendants replied to Plaintiffs' Opposition. (Doc. 22, Defendants' Reply, filed Aug. 9, 2004).

Oral argument was heard on August 16, 2004. Russell K. Ryan, Esq., appeared on behalf of Plaintiffs. Matthew G. Backowski, Esq., appeared on behalf of Defendants.

---

[1] In Plaintiffs' First Amended Complaint, Plaintiffs state their third claim as "Interference with Business Relationships." However, most case law refers to this claim as "Interference with Economic Relationships." This Memorandum Decision will refer to Plaintiffs' third claim as "Interference with Economic Relationship(s)," or "Interference with existing Economic Relationship(s)."

III.    **STATEMENT OF ALLEGATIONS**

A.    **Summary of Alleged Negotiations and Contract Provisions.**

This case arises out of an agreement pursuant to which Defendant Cathay was to supply Plaintiff QC with color pigments used in architectural concrete.  Defendant Cathay is a manufacturer and supplier of color pigments used in the concrete industry.  (Doc. 14, First Am. Compl. at ¶ 3).  Cathay is a Nevada corporation with its principal place of business in El Mirage, Arizona.  (*Id.*).  Defendant Edison, a resident of Arizona, is the president of Cathay.  (*Id.* at ¶ 4).  Plaintiff QC is a limited liability company that sells concrete specialty products.  (Doc. 14, First Am. Compl. at ¶ 2).  QC is incorporated in Delaware and does business throughout California, with its principal place of business in Madera County, California (Doc. 14, First Am. Compl. at ¶ 2).  QC is an affiliate of Bomanite.  (*See id.*; *see also* Doc. 14, First Am. Compl. at ¶ 1).  Plaintiff Bomanite is a franchisor of concrete businesses throughout the United States and Canada.  (*See* Doc. 21, Plaintiffs' Opp. at 2:3-5).  Bomanite is a California corporation with its principal place of business in Madera County, California.  (Doc. 14, First Am. Compl. at ¶ 1).

On August 9, 2002, Defendant Cathay, by and through Defendant Edison, and Plaintiff QC entered into an agreement for the sale of both "Raw Pigments" and "Blended Products."  (Doc. 14, First Am. Compl. at Ex. A, Supply Agreement).  "Raw Pigments" are defined by the Agreement as "Cathay Synthetic Iron Oxide Pigments," and "Blended Products" are defined as "custom made

**4**

iron oxide blends." (*Id.*).  On March 12, 2003, Plaintiff

Bomanite was added to the Supply Agreement as an additional and

optional buyer.  (*Id.* at Ex. B).

Plaintiffs allege that, before they entered into the Supply

Agreement, Defendant Cathay (through Edison) represented to

Plaintiffs that Cathay had the ability to manufacture "Blended

Products" for Plaintiffs.  (*Id.* at ¶ 8).  Plaintiffs further

allege that they "explained" to Defendants that any agreement

between them would provide that (a) Cathay manufacture Blended

Products that would be shipped directly to QC warehouses

nationwide, and (b) Cathay would sell both the Raw Pigments and

Blended Products to Plaintiffs on consignment, much like Bayer

Corporation ("Bayer"), QC's prior supplier, had done.  (*Id.* at ¶

9).  Furthermore, Plaintiffs allege there was an understanding

between the parties that Defendants could and would perform the

following: supply six months of consignment inventory; engage in

color matching to manufacture Blended Products within 90 days;

and satisfy the manufacturing requirements for Raw Pigments and

Blended Products that Plaintiffs' former supplier had previously

met.  (*Id.* at ¶¶ 9-10).

At the time of their negotiations with Defendants,

Plaintiffs were also negotiating with other pigments suppliers,

including Kingland Chemical Companies, Ltd. ("Kingland").  (*Id.*

at ¶ 11).  Kingland was allegedly "able to provide better pricing

on pigments [than Cathay] but did not have the ability to provide

consignment inventory to replenish QC's warehouses."  (*Id.*).

Plaintiffs claim that Cathay's representations about its ability

to manufacture Blended Products and provide consignment inventory

induced QC to enter into the Agreement with Cathay instead of Kingland.  (*Id*.).

The Supply Agreement provides that Cathay will sell to QC, and QC will purchase from Cathay, Raw Pigments or Blended Products that are "formulated to [QC's] specifications and packaged in proprietary QC Construction Products Bags."  (*Id*. at Ex. A).  The Agreement does not specify quantities to be purchased, although it states an estimated amount of "between 3 million pounds and 5 million pounds of Raw Pigments and finished Blended Products" per year.  (*Id*.).  The Agreement also contains pricing and packaging provisions.  (*See id*.).  Finally, the Agreement specifies terms for "purchase orders" and "consignment orders":

> For all purchase orders, terms are net 60 days from the date of delivery to buyer's designated delivery point.
>
> For all consignment orders, terms will be net 30 days from the reporting of consignment inventory usage.  Usage reports from all consignment locations shall be summarized by Buyer and submitted to Seller within 7 working days from the end of the prior month.  In any event, any consignment inventory not consumed, sold or otherwise used by Buyer within 6 months of delivery to Buyer will either be returned to Seller's warehouse facility in El Mirage, AZ at Buyer's expense or deemed purchased.  For any such inventory so purchased, Seller shall immediately present an invoice to Buyer and payment for such inventory will be due to Seller within 15 days of the receipt of the invoice.

(*Id*.).

The Supply Agreement provides that Cathay's liability for damages shall not exceed the purchase price of the pigments delivery at issue.  (*Id*. at Ex. A ("Seller's liability for damages shall in no event exceed the purchase price of the particular delivery with respect to which such damages are

claimed.")).  The Supply Agreement also contains an integration clause:  "This document shall constitute the complete Agreement and understanding between the parties, and its terms may be modified only by the written agreement of both parties."  (*Id.*).

Plaintiffs' Amended Complaint goes on to allege that "[i]t is now evident that Cathay did not have the financial or manufacturing capability to provide consignment inventory or Blended Products...."  (*Id.* at ¶ 15).  Plaintiffs claim that from August 2002 to December 2003, Cathay did not supply to QC or Bomanite "even a single bag of product for consignment inventory or fulfill[] any order for Blended Products."  (*Id.* at ¶ 16).  Plaintiffs allege that as a result of Cathay's non-performance of the terms of the Supply Agreement, Plaintiffs' production costs have risen;  Plaintiffs have had to manufacture more than $500,000 in inventory that they would otherwise have purchased from Cathay;  and they have had to purchase products in the open market at significantly higher prices than the price agreed upon in the Supply Agreement.  (*Id.* at ¶ 16).

On December 2, 2003, some sixteen months after the Supply Agreement was signed, Cathay sent a letter to Plaintiffs terminating the Supply Agreement.  (*Id.* at ¶ 18).  Plaintiffs claim that Cathay terminated the Agreement because of an alleged "fabricated" assertion that Plaintiffs were in breach of the Supply Agreement.  (*Id.*).  Plaintiffs allege that they "performed on all promises, covenants, and conditions required of it... under the terms of [the] Supply Agreement and its amendment."  (*Id.* at ¶ 21).  Plaintiffs claim that since terminating the Supply Agreement, Cathay has refused to release a shipment of

**7**

ordered products, even after Plaintiffs paid them an additional $100,000 for the delivery of that product. (*Id.* at ¶ 18).

**B.   Summary of Causes of Action and Damages Claimed.**

Plaintiffs allege four causes of action against Defendants: (1) breach of contract; (2) fraud; (3) interference with an existing economic relationship; and (4) interference with prospective economic advantage.   (*Id.* at ¶¶ 19-47).

**1.   Breach of Contract.**

First, Plaintiffs claim breach of the Supply Agreement. They allege that Cathay breached the Supply Agreement by:

(a)   failing to provide consignment orders;
(b)   failing to deliver the quantities of raw and blended products ordered by Plaintiffs;
(c)   failing to meet the performance criteria set forth in Attachment 3 to the Supply Agreement;
(d)   failing to provide blended products as contemplated by Attachment 1 of the Supply Agreement;
(e)   refusing to provide further product until Plaintiffs pay for orders in which payments are not yet due; and
(f)   approaching and/or soliciting QC's customers including, but not limited to, Cohill's Building Specialities inasmuch as Cathay was providing Cohill's Blended Products or other architectural concrete products.

(*Id.* at ¶ 22).

Plaintiffs allege that their damages total in excess of $750,000, resulting in part from:

(a)   having to purchase replacement products at higher costs from other suppliers,
(b)   increased manufacturing and labor costs, overhead expenses, substantial freight costs, etc., from having to manufacture its own blended products instead of purchasing them from Cathay,
(c)   having to maintain their inventory themselves instead of having the six months' consignment inventory promised by Cathay, and
(d)   QC's inability to fill orders for certain products, thereby jeopardizing QC's relationships with some of

**8**

its customers.

(*Id.* at ¶ 23).   Plaintiffs claim they are entitled to compensatory damages as well as consequential damages for their breach of contract claim.   (*Id.* at ¶ 24).   Plaintiffs argue that the provision that damages would not exceed the purchase price was included in the contract because "[Defendant] Edison... wished to protect Cathay from situations where, for example, a wrong color was used which then resulting [sic] in a dispute over a construction project that might claim excessive damages." (*Id.*).   Furthermore, Plaintiffs allege that "[t]his language was not meant to apply to the Supply Agreement in situations such as the present where no product delivery was made or Cathay was wholly unable to provide Blended Products or Consignment Inventory."   (*Id.*).

### 2.   Fraud.

Second, Plaintiffs claim that Defendants defrauded them. Plaintiffs' fraud claim is based on Defendants' alleged series of "representations about its ability to provide consignment inventory and [to] produc[e]...Blended Products[, which] induced QC to do business with Cathay."   (*Id.* at ¶ 28).   Plaintiffs allege that it was "Defendants' secret intention not to perform in accordance with their promises...."   (*Id.* at ¶ 34). Plaintiffs allege that if QC "had known the truth, it would not have contracted with Cathay but would have continued to do business with Bayer[, its former supplier,] and/or entered into a business relationship" with another supplier.   (*Id.*).   Plaintiffs allege that "as a proximate result of Defendants' fraud and

**9**

deceit, Plaintiffs have been damaged in an amount of at least $750,000.00, plus costs and attorneys' fees...." (*Id.* at ¶ 35). Plaintiffs also claim that Defendants' "despicable," intentional misrepresentations subjected Plaintiffs to "cruel and unjust hardship," and justifies "an award of exemplary and punitive damages." (*Id.* at ¶ 41)

### 3.  Interference with Existing Economic Relationships.

Third, Plaintiffs claim that Defendants tortiously interfered with Plaintiffs' economic relationship with Bayer. (*Id.* at ¶ 39).  Specifically, Plaintiffs allege that "Defendants' actions...interfere[d] with Plaintiffs' contractual relationship with Bayer such that QC and Bomanite were no longer able to obtain consignment inventory from Bayer and/or satisfactory credit terms that would have permitted QC and Bomanite to maintain its [sic] nationwide presence in a financially satisfactory manner." (*Id.* at ¶ 40).  Plaintiffs allege that they have been financially harmed "in an amount which [h]as not yet been ascertained, but is believed to be in excess of $750,000.00." (*Id.*).  Plaintiffs also claim that Defendants' "despicable," intentional misrepresentations caused injury to Plaintiffs' economic relationship with Bayer, and justifies "an award of exemplary and punitive damages." (*Id.* at ¶ 41).

### 4.  Interference with Prospective Economic Advantage.

Fourth, Plaintiffs claim that Defendants interfered with Plaintiffs' prospective economic advantage with a potential supplier and one of its customers.  Plaintiffs allege that

Defendants' actions interfered with Plaintiffs' prospective economic advantage with Kingland, a potential supplier, because Plaintiffs opted not to contract with Kingland to purchase Raw Pigments and Blended Products at lower prices and better credit terms than were available from Cathay due to Defendants' fraudulent misrepresentations.  (*Id.* at ¶ 46).   Plaintiffs further allege that Defendants approached and solicited business from Cohill's Building Specialties, one of Plaintiffs' customers, and is currently, or was in the very recent past, selling architectural concrete products directly to them.  (*Id.* at ¶ 45).  Plaintiffs allege that they "have been damaged in an amount which [h]as not yet been ascertained, but is believed to be in excess of $750,000.00."  (*Id.* at ¶ 46).   Plaintiffs also claim that Defendants' "despicable," intentional misrepresentations deprived Plaintiffs of prospective economic advantage, and justifies "an award of exemplary and punitive damages."  (*Id.* at ¶ 47).

### 5.   Damages.

Plaintiffs seek (1) damages "in excess of $750,000.00," arising from breach of contract, fraud, interference with an existing economic relationship, and interference with prospective economic advantage (*Id.* at ¶ 23; *id.* at Prayer for Relief, ¶ 1).  Plaintiffs also seek: (2) punitive damages for fraud, interference with an existing economic relationship, and interference with prospective economic advantage; (3) attorney's fees; (4) the costs of the suit; and (5) any other relief the court may deem "just and proper."  (*Id.* at Prayer for Relief, ¶¶ 2-5).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.   **STANDARDS OF REVIEW**

A.   **Motion to Dismiss for Failure to State A Claim upon which Relief Can Be Granted - Fed. R. Civ. P. 12(b)(6).**

Fed. R. Civ. P. 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  However, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is disfavored and rarely granted.  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).  In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  Dismissal of the complaint is proper if, assuming the allegations to be true, it "fail[s] to state a claim on its face."  *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980).

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).  For example, matters of public record may be considered, including pleadings,

12

orders, and other papers filed with the court.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted.  *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

**B.   Stating Circumstances of Fraud with Specificity - Fed. R. Civ. P. 9(b).**

Rule 9(b) of the Federal Rules of Civil Procedure provides that "in all averments of fraud..., the circumstances constituting fraud...shall be stated with particularity."  *See also Berry v. Valence Tech., Inc.*, 175 F.3d 699, 706 (9th Cir. 1999).

## V.   LEGAL ANALYSIS

**A.   Defendants' Motions to Dismiss.**

Defendants move to dismiss Plaintiffs' claims for: (1) consequential damages for breach of contract; (2) fraud; (3) interference with an economic relationship; and (4) interference with prospective economic advantage.

**1.   Defendants' Motion to Dismiss Plaintiffs' Consequential Damages Claim for Breach of Contract.**

Defendants move to "dismiss Plaintiffs' breach of contract claim to the extent Plaintiffs seek damages beyond those permitted under the integrated contract between the parties." (Doc 17, Defendants' Memo, 1:27-28; 14:11-15:12).  Defendants

argue that Plaintiffs' claim for consequential damages should be barred because the damages clause in the Agreement limits the amount of damages to the purchase price of the particular delivery of product over which the dispute arises. (*Id.* at 14:11-12). Plaintiffs, however, argue that the damages clause in the Agreement is being taken out of context and was not intended to apply to the circumstances giving rise to this suit. (Doc 14, First Am. Compl. at ¶ 24; Doc 21, Plaintiffs' Opp. at 12:9-25). Plaintiffs argue that extrinsic evidence will prove that the damages clause was included in the Agreement simply to protect Defendants "from situations where, for example, a wrong color was used which then" results in a dispute in which excessive damages are claimed. (*Id.*).

Under the California Civil Code, extrinsic evidence is generally inadmissible when the language of the contract is clear and unambiguous. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Cal. Civ. Code § 1638; *see also McAbee Constr., Inc. v. U.S.*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (holding that if contractual provisions are "clear and unambiguous, they must be given their plain and ordinary meaning, and the court may not resort to extrinsic evidence to interpret them") (internal quotations and citations omitted)). However, an exception to this general rule applies when the language of the contract is not clear and unambiguous: "if a term is ambiguous, its interpretation depends on the parties' intent at the time of the contract's execution, in light of earlier negotiations,... [and] related agreements...." *Pierce County Hotel Employees v.*

**14**

*Elks Lodge*, 827 F.2d 1324, 1327 (9th Cir. 1996).

Defendants argue that the damages clause in the Agreement prevents Plaintiffs from seeking consequential damages because the clause is clear and limits the amount of damages that can be claimed.  The clause states: "Seller's liability for damages shall in no event exceed the purchase price of the particular delivery with respect to which such damages are claimed."  (Doc. 14, First Am. Compl. at Ex. A, Conditions, ¶ 3).  Plaintiffs' claim for consequential damages for breach of contract in their original Complaint was dismissed on Defendants' earlier motion. The court found that the damages clause is clear and limits the amount of damages Plaintiffs can claim to the total cost of the delivery order in dispute.  (Doc. 11, Memo Decision at 12:12-23).

In their First Amended Complaint, Plaintiffs claim they are entitled to consequential damages because of the mutual intention of the parties at the time of contracting.  (Doc. 21, Plaintiffs' Opp. at 12:14-15.)  They claim that Defendants have "take[n] out of context an isolated sentence in the conditions attached to the supply agreement...."  (*Id.* at 12:10-11).  Plaintiffs also argue that "[t]his language is clearly not intended to deal with overall contract performance by Cathay, since the language surrounding the sentence in question provides layers of context for the intent and interpretation of that sentence."  (*Id.* at 12:20-22).[2]

---

**2**  The majority of Plaintiffs' Opposition brief replicates the arguments made in their original defense against Defendants' motion to dismiss Plaintiffs' consequential damages claim.  (*See* Doc. 21, Plaintiffs' Opp. at 12:9-22; *see also* Doc. 8, Plaintiffs' Memo at 5:11-25).  Plaintiffs have not attempted to

The damages clause in the Supply Agreement is unambiguous and part of a fully integrated agreement.  (*See* Doc. 14, First Am. Compl. at Ex. A, Conditions, ¶ 3; *see also id.* at Ex. A, Conditions, ¶ 5 ("This document shall constitute the complete Agreement and understanding between the parties, and its terms may be modified only by the written agreement of both parties.")).  There is no claim that the contract is adhesive or unconscionable.  It is not appropriate to look outside the written contract to "the parties' intent" because the clause clearly limits the amount of damages that can be claimed.  (Doc 21, Plaintiffs' Opp. at 12:23-25).[3]

This is not to say that Plaintiffs' consequential damages are not recoverable under their fraud or other tort causes of action.  Consequential damages are still recoverable under these alternate causes of action, just not under Plaintiffs' breach of contract cause of action.  Defendants' motion to dismiss Plaintiffs' consequential damages claim for breach of contract is **GRANTED WITH PREJUDICE.**  To the extent Defendants move to dismiss Plaintiffs' consequential damages claims for alternate causes of action, Defendants' motion is **DENIED.**

mend the defects that were present in their previous pleading.

[3]  Plaintiffs' additional claim that Defendants' motion "is not ripe for consideration" is unsupported.  (*Id.* at 12:26-27).  Plaintiffs do not explain why Defendants' motion to dismiss consequential damages is "not ripe."  The reasons given for Defendants' previously granted motion to dismiss consequential damages for Plaintiffs' breach of contract claim are still valid and remain unaddressed in the Amended Complaint or Opposition.

**2.   Defendants' Motion to Dismiss Plaintiffs' Fraud Claim.**

Defendants move to dismiss Plaintiffs' fraud claim. Plaintiffs seek to introduce parol evidence to prove that Defendants intentionally misrepresented their contracting and performance intentions in order to induce Plaintiffs to sign the Agreement.   Defendants seek to ban Plaintiffs' admission of parol evidence, and move to dismiss Plaintiffs' fraud claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   (Doc. 17, Defendants' Memo at 7:21-25).   Defendants argue that Plaintiffs cannot prove all the elements required for a fraud claim without introduction of parol evidence, and therefore fail to state a claim.   (*Id.* at 7:24-25).   Alternatively, Defendants move for more specific pleading of Plaintiffs' fraud claim for lack of particularity as required by Fed. R. Civ. P. 9(b).   (*Id.* at 8:24-25).

**a.   Failure to State a Claim - Fed. R. Civ. P. 12(b)(6).**

To state a claim for fraud, a plaintiff must allege the following five elements: (1) misrepresentation of a material fact (false representation, concealment, or non-disclosure); (2) knowledge of falsity; (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003) (internal quotations and citation omitted).

The parol evidence rule, as applicable to written contracts, generally prohibits introduction of extrinsic evidence, whether oral or written, to vary the terms of an integrated written

17

agreement.  *Pacific State Bank v. Greene*, 110 Cal. App. 4th 375, 383-384 (2003); *see also* Cal. Civ. Proc. Code § 1856.  Parol evidence refers to matters spoken or agreed upon orally, but not included in a written instrument.  *See Pacific State Bank*, 110 Cal. App. 4th at 378.

An integrated agreement is one that contains a clause stating that the contract is to be considered the complete and exclusive agreement between the parties.  *See id.* at 384. Inclusion of an integration clause typically prohibits the introduction of parol evidence.  *Trident Ctr. v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564, 568 (9th Cir. 1988).  The parol evidence rule is subject to an exception for fraud.  The parol evidence rule "does not exclude...evidence of the circumstances under which [an] agreement was made...to establish illegality or fraud."  (Cal. Civ. Proc. Code § 1856(g)).

California law provides two instances in which parol evidence may be introduced under the fraud exception.  First, parol evidence is admissible in cases where one party misrepresents the contents of the contract at the time of signing.  *Pacific State Bank*, 110 Cal. App. 4th at 378-79. Second, parol evidence is admissible when one party misrepresents, or makes false promises of, its intentions to perform:

> [Courts] have held that if, to induce one to enter into an agreement, a party makes an independent promise without intention of performing it, this separate false promise constitutes fraud....

*Bank of America v. Lamb Finance Co.*, 179 Cal. App. 2d 498, 502

(1960); *see also Bell v. Exxon Co.*, 575 F.2d 714, 716 (9th Cir. 1978) (finding that parol evidence is admissible to show fraudulent inducement to enter into a contract "even though the contract recites that all conditions and representations are embodied therein").   Based on their pleadings and on representations made during oral argument, Plaintiffs do not appear to allege that Defendants' misrepresentations were ones of fact mischaracterizing the content of the written Agreement at the time of signing.   Instead, Plaintiffs appear to allege that Defendants' misrepresentations were promissory.

When promissory misrepresentations are alleged, as they are here, the *Pendergrass* rule applies.   Under the *Pendergrass* rule, introduction of parol evidence is admissible to prove promissory fraud only if it does not contradict the terms of the written contract.   *Bank of America Nat. Trust & Savings Assoc. v. Pendergrass*, 4 Cal. 2d at 263 (1935).   While allegations of fraud will ordinarily allow the admission of parol evidence, the "*Pendergrass* rule...precludes the admission of evidence of a false promise inconsistent with the terms of a written agreement to prove fraud."   *Continental Airlines*, 216 Cal. App. 3d at 420 (citing *Pendergrass*, 4 Cal. 2d at 263).   "For parol evidence of fraud or misrepresentation to be admissible under California law, 'it must tend to establish some independent fact or representation..., and not a promise directly at variance with the promise of the writing.'"   *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 281 (9th Cir. 1992) (emphasis omitted) (quoting *Pendergrass*, 4 Cal. 2d. at 263).   As the California Supreme Court recently stated, "despite some

**19**

criticism, our courts have consistently rejected promissory fraud claims premised on prior or contemporaneous statements *at variance with* the terms of a written integrated agreement." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 347 (2004) (emphasis added).

Plaintiffs seek to introduce parol evidence of Defendants' alleged promises to provide goods on consignment and to provide Blended Products that were made to entice Plaintiffs to sign the Supply Agreement.  (Doc. 14, First Am. Compl. at ¶¶ 15, 31).  Plaintiffs claim that one of "the two major components of [the] agreement" was its consignment provision and that QC verbally informed Defendants that "six months of consignment inventory was particularly critical for QC...." (*Id*. at ¶¶ 9, 26).  Plaintiffs allege that "Cathay represented on several occasions that [it] had the ability to both manufacture Blended Products and provide the consignment inventory QC needed...." (*Id*. at ¶ 10).  This allegation satisfies the first element of fraud, misrepresentation of material facts.  Plaintiffs claim that it was "[i]n reliance upon these representations and promises...[that QC] executed the Supply Agreement." (*Id*. at ¶ 29).  This allegation satisfies the fourth element, justifiable reliance.  Plaintiffs allege that "Cathay did not have the ability (financial or otherwise) to comply with [the] Supply Agreement...," and had "secret intentions not to perform in accordance with their promises...." (*Id*. at ¶¶ 17, 33, 34).  Plaintiffs also allege, therefore, that "Defendants' conduct consisted of intentional misrepresentations, deceit and/or concealment of material facts known to Defendants with the

20

intention of" injuring Plaintiffs.  (*Id*. at ¶ 36).  These
allegations satisfy the second and third elements, knowledge of
falsity and intent to defraud, respectively.  Plaintiffs further
allege that "as a proximate result of Defendants' fraud and
deceit, Plaintiffs have been damaged in an amount of at least
$750,000.00, plus costs and attorneys' fees...."  (Id. at ¶ 35).
This satisfies the fifth element of fraud, resulting damage.

Defendants argue that, despite Plaintiffs' attempt to
introduce parol evidence of alleged fraudulent inducements and
promises concerning the consignment agreement, the parol evidence
rule prohibits the introduction of parol evidence because the
Supply Agreement contains an integration clause.  (Doc. 17,
Defendants' Memo at 5:19-25).  The Agreement states that it
"shall constitute the complete Agreement and understanding
between the parties, and its terms may be modified only by the
written agreement of both parties."  (Doc 14, First Am. Compl. at
Ex. A, Conditions, ¶ 5).  Inclusion of an integration clause,
such as this, typically prohibits the introduction of parol
evidence for purposes of interpretation and clarification.
*Trident Ctr. v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564, 568
(9th Cir. 1988) ("Under traditional contract principles,
extrinsic [or parol] evidence is inadmissible to interpret, vary
or add to the terms of an unambiguous integrated written
instrument." (citations omitted)).  In this case, however,
Plaintiffs are seeking to introduce parol evidence not to clarify
the meaning of a contract term, but instead to establish fraud.
The fraud exception to the parol evidence rule applies.

Defendants also argue that, even if the fraud exception applies, the *Pendergrass* rule precludes admission of Plaintiffs' parol evidence because the parol evidence contradicts the express terms of the Supply Agreement.  (Doc. 17, Defendants' Memo at 6:7-9).  Defendants fail to provide any valid examples of contradiction.  Although the Supply Agreement lacks specificity regarding the amount of product Plaintiffs expected to receive on consignment, Plaintiffs' parol evidence does not contradict the terms of the Supply Agreement.  According to the terms of the Agreement, between August 5, 2002 and August 4, 2005, Plaintiffs' "[a]nnual purchases [we]re anticipated to be between 3 million and 5 million pounds of Raw Pigments and finished Blended Products."  (Doc. 14, First Am. Compl. at Ex. A, Supply Agreement, Period & Quantity).  The Supply Agreement was to cover both "purchase orders" and "consignment orders":

> For all purchase orders, terms are net 60 days from the date of delivery to buyer's designated delivery point.
>
> For all consignment orders, terms will be net 30 days from the reporting of consignment inventory usage. Usage reports from all consignment locations shall be summarized by Buyer and submitted to Seller within 7 working days from the end of the prior month.  In any event, any consignment inventory not consumed, sold or otherwise used by Buyer within 6 months of delivery to Buyer will either be returned to Seller's warehouse facility in El Mirage, AZ at Buyer's expense or deemed purchased.  For any such inventory so purchased, Seller shall immediately present an invoice to Buyer and payment for such inventory will be due to Seller within 15 days of the receipt of the invoice.

(*Id.* at Ex. A, Supply Agreement, Terms).  Plaintiffs' parol evidence of Defendants' promises to provide goods on consignment and to manufacture Blended Products does not contradict these

22

terms.  The Agreement is silent on these issues, so there can be no contradiction.  The parol evidence Plaintiffs seek to introduce does not contradict the express terms of the Supply Agreement.  Rather, it is explanatory of the alleged intent of the parties.  Parol evidence is not barred under *Pendergrass*.

For the reasons stated above, Plaintiffs' parol evidence of fraud is not barred.  Because Plaintiffs' parol evidence of the Parties' contracting intent is admissible, there is a set of facts supporting Plaintiffs' claim which could entitle them to relief.  *See Van Buskirk*, 284 F.3d at 980.  Defendants' motion to dismiss Plaintiffs' fraud claim for failure to state a claim upon which relief can be granted is **DENIED**.

> **b.    Failure to Plead with Particularity - Fed. R. Civ. P. 9(b).**

Defendants also move to dismiss Plaintiffs' fraud claim for failure to plead with sufficient particularity.  However, Plaintiffs' claim speaks of the subject matter, the persons involved, the dates of the contract, and the occasions of the alleged fraud.  Fed. R. Civ. P. 9(b) does not require more.  Defendants' motion to require Plaintiffs to plead their fraud claim with greater particularity is **DENIED**.

> **3.  Defendants' Motion to Dismiss Plaintiffs' Claim for Interference with an Existing Economic Relationship.**

23

Defendants move to dismiss Plaintiffs' claim for tortious interference with an existing economic relationship.  Plaintiffs allege that Defendants interfered with their economic relationship with Bayer, one of its former suppliers.

The elements a plaintiff must allege to state a claim for interference with an existing economic relationship are: (1) a valid contract between the plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant. *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Plaintiffs allege that "[b]y virtue of [] Cathay's fraudulent representations of its ability to provide consignment inventory and Blended Products, QC (and later, Bomanite) stopped doing business with Bayer Corporation...." (Doc. 14, First Am. Compl. at ¶ 39).  However, Plaintiffs do not claim that they had a valid contract with Bayer.  Plaintiffs therefore fail to meet the first element, and do not state a claim for interference with an existing economic relationship as to Bayer.  During oral argument, Plaintiffs' counsel indicated that in their pleading, they had mistakenly alleged that Defendants interfered with their economic relationship with its supplier, Bayer, instead of with

**24**

their existing client, Cohill's Building Specialties.

Plaintiffs allege in a different section of their complaint that Defendants interfered with Plaintiffs' existing economic relationships with its customers. Plaintiffs allege that "Cathay [] approach[ed] and solicit[ed] business from Cohill's Building Specialties and is currently (or in the very recent past[] has been[)] selling architectural concrete products directly to Cohill's Building Specialties." (*Id.* at ¶ 45). Cohill's Building Specialties was previously one of Plaintiffs' customers. (*Id.*). During oral argument, Plaintiffs claimed that they had a ten-year supply agreement with Cohill's Building Specialties. (Doc. 25, Transcript at 16:7-13). Plaintiffs allege that Defendants knew of their relationships with its customers, including their relationship with Cohill's Building Specialties. (Id. at 17:9-14). Plaintiffs claim that Cohill's Building Specialties is no longer buying product from them, in large part because "Cathay now has a direct deal with them." (*Id.* at 16:14-18). Plaintiffs additionally allege damages resulting from Defendants' interference; however, the exact amount has not yet been ascertained.

As presently pleaded, Plaintiffs' third cause of action does not state a claim for interference with an existing economic relationship because there is no reference to Cohill's Building Specialties. Defendants' motion to dismiss Plaintiffs' claim for

25

interference with an existing economic relationship is **GRANTED WITH LEAVE TO AMEND.**

### 4.   Defendants' Motion to Dismiss Plaintiffs' Claim for Interference with Prospective Economic Advantage.

Defendants move to dismiss Plaintiffs' claim for tortious interference with prospective economic advantage.  Plaintiffs' First Amended Complaint alleges that Defendants interfered with Plaintiffs' prospective economic advantage with (1) Kingland and (2) Cohill's Building Specialties.[4]  Defendants argue that Plaintiffs fail to state a claim for interference with prospective economic advantage as to both Kingland and Cohill's Building Specialties, and that parol evidence is inadmissable to support Plaintiffs' claims of wrongful conduct pursuant to the parol evidence rule.  (Defendant's Reply at 7:25-8:2). Defendants argue that their Fed. R. Civ. P. 12(b)(6) motion to

---

[4]  Although Plaintiffs cite to the elements of a prima facie case in their opposition, they do not demonstrate how their claims satisfy each of the five requirements, but rather, leave it to the court to infer how their complaint establishes each element.  (Doc. 21, Plaintiffs' Opp. at 10:23-12:7).  Plaintiffs cite two cases, without providing specific reference to language of these cases, which purportedly support their argument that "[i]t is universally recognized that an action will lie for interference with economic relationships by the occurrence of acts which are in themselves unlawful such as defamation, libel, slander, or fraud."  (*Id*. at 11:1-4 (emphasis in original)). Plaintiffs do not explain the relationship between their allegations and these cases or how their conclusory assertion substitutes for establishing all the elements of the prima facie case.

dismiss should be granted because Plaintiffs fail to plead a prima facie case as to both Kingland and Cohill's Building Specialties.  (Doc. 22, Defendants' Reply at 7:22-23).

The elements a plaintiff must allege to state a claim for interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third person with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 475 (1996).

In addition to pleading the five elements, Plaintiffs must also plead that Defendants engaged in "wrongful conduct." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. Rptr. 4th 376, 377 (1995).  "The California Supreme Court has recently clarified that a defendant's culpable conduct is not established by simply showing intentional acts that disrupted the plaintiff's prospective economic relations." *Id.* at 381-393.  A plaintiff prosecuting an interference with prospective economic [advantage] claim "must prove that the defendant engaged in wrongful conduct." *Arntz Contracting Co.*, 47 Cal. App. 4th at 476.

A plaintiff seeking to recover for an alleged

interference with prospective...economic [advantage] must plead and prove as part of its case [] that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.

*Della Penna*, 11 Cal. Rptr. 4th at 393.

Without this requirement of wrongfulness, beyond the fact of interference alone, "actors in perfectly legitimate economic transactions would be put to justifying the conduct of their business at the whim of a rival." *Della Penna*, 11 Cal. Rptr. 4th at 390 (citations omitted).  However, the precise scope of "wrongfulness" has not been specified.  *Arntz Contracting Co.*, 47 Cal. App. 4th at 476.  Rather, the focus has been on "the defendant's objective conduct....[E]vidence of motive or other subjective states of mind is relevant only to illuminating the nature of that conduct."  *Id.* at 477.

Plaintiffs allege that Kingland was a prospective supplier and that Defendants' fraudulent misrepresentations led Plaintiffs to cease negotiating with Kingland.  Plaintiffs allege that Kingland was "willing and able to provide raw materials and Blended Products and much lower prices than those offered by Cathay...."  (Doc. 14, First Am. Compl. at ¶ 44).  This allegation satisfies both the first and fifth elements of interference with prospective economic advantage: an economic relationship with the probability of future economic benefit to

the Plaintiff, and economic harm proximately caused by
Defendants, respectively.  Plaintiffs allege that "part of
Cathay's plan" in fraudulently inducing Plaintiffs with false
promises was "for [Plaintiffs] to stop doing business with any
other pigment suppliers and rely exclusively on Cathay."  (*Id.*).
This satisfies the third element, intentional acts designed to
disrupt the relationship.  Plaintiffs allege that Defendants'
actions were disruptive in that "QC and [Bomanite] did not
contract with Kingland to purchase raw materials and Blended
Products."  (Doc 14, First Am. Compl. at ¶ 46).  This satisfies
the fourth element, actual disruption of the relationship.  Also,
Plaintiffs' allegations of Defendants' fraudulent
misrepresentations to deter Plaintiff from an advantageous
product supply relationship with a third party satisfies the
"wrongfulness" requirement.  These allegations are not barred by
the parol evidence rule.

As to the second element, however, Plaintiffs fail to allege
that Defendants had knowledge of the alleged negotiations with
Kingland.  (Doc. 17, Defendants' Memo at 11:20-21).  Plaintiffs
do not plead facts to show the second element, Defendants'
knowledge of the relationship with Kingland.  Plaintiffs fail to
state a claim for interference with prospective economic
advantage as to Kingland.

Defendants also move to dismiss Plaintiffs' claim for

interference with prospective economic advantage with regard to Cohill's Building Specialties.  Plaintiffs allege that Defendants "us[ed] specialized knowledge it gained during the process of reformulating products to meet the needs of QC and Bomanite" to interfere with their prospective economic advantage with Cohill's Building Specialties.  However, Plaintiffs acknowledged during their oral argument that they mistakenly placed the claim regarding Cohill's Building Specialties in the wrong section of their complaint.  (Doc. 25, Transcript at 18:2-11; see also *id.* at 22:14-15).  Plaintiffs had an existing economic relationship with Cohill's Building Specialties, not a prospective economic advantage.  As such, Plaintiffs mispled this claim (see above).

Plaintiffs do imply in their First Amended Complaint that Defendants were aware of their relationship with Bayer, their previous supplier.  (*See* Doc. 14, First Am. Compl. at ¶¶ 10, 39).  As discussed above, Plaintiffs failed to state a claim for interference with an existing economic relationship as to Bayer because they do not identify a contract or other continuing business relationship.  To the extent Plaintiffs intended to state a claim for interference with prospective economic advantage as to Bayer, they are granted **LEAVE TO AMEND** to do so.

Plaintiffs have not sufficiently pled intentional interference with a prospective economic advantage with regard to Kingland.  Defendants' motion to dismiss Plaintiffs' claim for

interference with prospective economic advantage with regard to Kingland is **GRANTED WITH LEAVE TO AMEND.**  Plaintiffs' claim for interference with a prospective economic advantage with regard to Cohill's Building Specialties is pled under the wrong cause of action, and should be pled under the tort of interference with an existing economic relationship.  Defendants' motion to dismiss Plaintiffs' claim for interference with prospective economic advantage with regard to Cohill's Building Specialties is **GRANTED WITH LEAVE TO AMEND.**

> B.  **Defendants' Motion to Bar Plaintiffs' Damages Claims Under the Economic Loss Rule.**

Defendants argue that Plaintiffs make four implicit claims for damages under a theory of economic loss, all of which are barred by the economic loss rule.  (Doc. 17, Defendants' Memo at 13:24-27; *see also* Doc. 14, First Am. Compl. at ¶ 23).  Plaintiffs state that they believe total damages "to be in excess of $750,000.00" arising from their claims of breach of contract, fraud, interference with an existing economic relationship, and interference with prospective economic advantage.  (*See* Doc. 14, First Am. Compl. at ¶¶ 23, 35, 40, & 46; *id.* at Prayer for Relief, ¶ 1).

The economic loss rule prohibits a plaintiff from recovering

economic loss suffered as a result of a defendant's breach of contract unless the defendant's conduct violates a legal duty independent of the terms of the contract.  "Negligent performance of a construction contract, without more," does not justify an award of economic loss.  *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000).  If a plaintiff alleges a tort cause of action, the plaintiff may recover economic losses.  "[C]onduct amounting to a breach of contract becomes tortious when it also violates a duty independent of the contract arising from principles of tort law." *Aas v. Superior Court*, 24 Cal. 4th at 643.  Economic loss may include "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits...."  *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482 (2002).

In Plaintiffs' breach of contract cause of action, Plaintiffs set forth four sources from which the $750,000.00 was "measured in part by":

(a)  having to purchase replacement products at higher costs from other suppliers,

(b)  increased manufacturing and labor costs, overhead expenses, substantial freight costs, etc., from having to manufacture its own blended products instead of purchasing them from Cathay,

(c)  having to maintain their inventory themselves instead of having the six months' consignment inventory promised by Cathay, and

(d)  QC's inability to fill orders for certain products, thereby jeopardizing QC's relationships with some of its customers.

(*Id.* at ¶ 23).   Although Plaintiffs list this amount of alleged damages throughout the First Amended Complaint, these four sources of partial measurement are not set forth within any subsequent cause of action alleged.   (*See id.* at ¶¶ 35, 40, & 46; *see also id.* at Prayer for Relief, ¶ 1).   Defendants assume that Plaintiffs restate these "harms" in each subsequent cause of action, and assume they are all economic loss claims under the same breach of contract cause of action.   Defendants argue that these subsequent implicit allegations of these four sources of economic harm are barred under the economic loss rule because tort claims cannot arise from a "garden-variety breach of contract."   (*Id.* at 14:1-3).   Defendants rely upon the following passage from *Aas v. Superior Court*, from which they argue that this rule arises:

> A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.   Instead, "courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies."   This court recently rejected the argument that the negligent performance of a construction contract, without more, justifies an award of tort damages.

24 Cal. 4th 627, 643 (2000) (internal quotations and citations omitted).   However, Defendants failed to explain what the California Supreme Court went on to reiterate: "conduct amounting to a breach of contract becomes tortious when it also violates a

duty independent of the contract arising from principles of tort law." *Id.* Defendants argue that Plaintiffs are attempting to parlay their breach of contract claim "into various tort claims to expand their recovery." (*Id.*). However, as stated above, Plaintiffs have asserted tort claims independent of their breach of contract claim that warrant the claim of damages for economic loss.

Under California law, recovery for economic loss is not barred for tort causes of action. Rather, there is a bar to recovery for economic loss for alleged tort claims that are no more than breach of contract claims. In this case, however, Plaintiffs have valid tort claims independent of their breach of contract claim. Plaintiffs are permitted to submit parol evidence of fraud, interference with an existing economic relationship, and interference with prospective economic advantage--all independent tort causes of action. With this evidence, Plaintiffs have valid tort claims. For these reasons, Defendants' motion to bar what they argue are claims for recovery of economic loss under Plaintiffs' breach of contract claim is **DENIED**.

*//*

*//*

*//*

//

## VI.   Conclusion

For the reasons stated above, the following orders are issued:

1.    Defendants' motion to dismiss Plaintiffs' consequential damages claim for their breach of contract claim is **GRANTED WITH PREJUDICE**; To the extent Defendants move to dismiss Plaintiffs' consequential damages claims for alternate causes of action, Defendants' motion is **DENIED**;

2.    Defendants' 12(b)(6) motion to dismiss Plaintiffs' fraud claim for failure to state a claim upon which relief can be granted is **DENIED**;

   Defendants' 9(b) motion to require Plaintiffs to plead their fraud claim with greater particularity is **DENIED**;

3.    Defendants' motion to dismiss Plaintiffs' claim for interference with an existing economic relationship is **GRANTED WITH LEAVE TO AMEND**;

4.   Defendants' motion to dismiss Plaintiffs' claim for interference with prospective economic advantage with regard to Kingland is **GRANTED WITH LEAVE TO AMEND;**

Defendants' motion to dismiss Plaintiffs' claim for interference with prospective economic advantage with regard to Cohill's Building Specialties is **GRANTED WITH LEAVE TO AMEND;**

5.   Defendants' motion to bar Plaintiffs' damages claims under the economic loss rule is **DENIED;**

Any amended complaint shall be filed within **fifteen (15)** days following date of electronic service of this order.

**SO ORDERED.**

Dated: July 14, 2005          /s/ OLIVER W. WANGER

_____

**Oliver W. Wanger**
**UNITED STATES DISTRICT JUDGE**